**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALLEN PRESBURY, SR** | **:** | **CIVIL ACTION** |
| | **:** | |
| **v.** | **:** | **NO.  22-331** |
| | **:** | |
| **CORRECT  CARE  SOLUTION  INC.,** | **:** | |
| **SCI-PHX MEDICAL DEPARTMENT** | **:** | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                                                    May 31, 2022

The Commonwealth's Department of Corrections holds Allen Presbury in custody at its SCI Phoenix facility for at least the past ten years. He now pro se sues the Department and its contracted medical provider for failing to authorize hip surgery over ten years ago. He alleges he learned the Department and its medical provider's decision to not authorize surgery became a permanent problem with a ruptured disc diagnosis less than two years ago. He further generally alleges, in the most conclusory fashion, cost concerns motivated the Department's and medical provider's decision over ten years ago. The Department and the medical provider now move to dismiss Mr. Presbury's pro se complaint for a variety of reasons. We disagree the statute of limitations bars these claims at this preliminary stage. But we must dismiss as Mr. Presbury has not pleaded a claim for the deprivation of his Eighth Amendment rights under section 1983 even given our liberal review of pro se pleadings. He fails to identify a decision or policy maker necessary to impose supervisory liability and fails to allege a policy or other grounds for us to plausibly infer the state actors decided not to authorize hip surgery ten years ago for cost reasons. His claims for money damages against the Commonwealth are barred by the Eleventh Amendment. We dismiss Mr. Presbury's claim for money damages from the Commonwealth with prejudice but grant him leave to amend to identify an individual state officer sued in his or her individual capacity for prospective injunctive and declaratory relief to end continuing or ongoing

violations of federal law. We also dismiss Mr. Presbury's claims against the medical provider for failing to plead either a policy or decision maker with the medical provider and facts from which we could plausibly infer cost concerns motivated the decision not to provide hip surgery ten years ago. Except for his money damages claim against the Commonwealth barred by Eleventh Amendment immunity, we grant Mr. Presbury leave to timely amend to plead facts which may support his claims.

## I.     Alleged pro se facts

The incarcerated Allen Presbury Sr.'s claim begins over ten years ago when an unidentified person approved Mr. Presbury for a total hip replacement. The Department's contracted outside medical provider Correct Care Solutions, LLC[1] denied him medical care to correct his dislocated hip ten years ago.[2] Mr. Presbury never received the surgery. Mr. Presbury then suffered a dislocated hip in the last two to five years.[3]

Unidentified persons (presumably state actors) transferred Mr. Presbury to medical facilities but failed to treat his hip condition.[4] The Department of Corrections' inaction continued until June 2, 2021, when it transferred Mr. Presbury to SCI Coal Township for examination by a physician at Geisinger Medical Center, including a CT scan and x-ray studies.[5] An unidentified physician at Geisinger Medical Center told Mr. Presbury sixty-five percent of hip surgeries result in infection and, because the earlier approved hip replacement never occurred, Mr. Presbury now has a ruptured disc in his spine and an improperly aligned spine.[6] Mr. Presbury did not learn the ruptured disc diagnosis until the June 2, 2021 examination.[7] The physician at Geisinger Medical Center also told Mr. Presbury a total hip replacement is the only solution to address his hip pain, but such surgery would be expensive and Mr. Presbury's advanced age will require years of physical therapy.[8] The physician declined to perform hip replacement surgery and could no longer

2

consult on the case.[9] Although not entirely clear, the Geisinger Medical Center physician also diagnosed Mr. Presbury with an "inverted toe."[10] The physician suggested a correction of the inverted toe would improve Mr. Presbury's postural "torso lean" causing spinal misalignment.[11]

Mr. Presbury returned to SCI Phoenix after the Geisinger examination. He then filed a grievance with SCI Phoenix in September 2021.[12] He does not attach to his complaint the grievance itself, but attaches other documents from which we infer his grievance centered on the denial of medical care for his hip and spine conditions. SCI Phoenix's Grievance Coordinator rejected Mr. Presbury's grievance on September 22, 2021 as untimely having not been submitted within fifteen working days after the complained-of event (which we assume is the June 2, 2021 examination at Geisinger Medical Center).[13]

Mr. Presbury appealed to the warden four days later.[14] His appeal complains of deliberate indifference to his medical condition relating to his hip and spine, his disagreement with the treatment he is receiving under an "alternative treatment program" which he considers conservative treatment when he should be receiving surgery, Correct Care Solutions' refusal to provide surgical intervention, a denial of medical care for his hip condition for over ten years, and challenges the rejection of his grievance for timeliness reasons where medical treatment is continually denied to him.[15] He requested the warden conduct an "independent investigation and not rely upon factfinders['] conclusions … who aren't medically trained."[16]

SCI Phoenix responded to Mr. Presbury's appeal on October 19, 2021.[17] SCI Phoenix recognized Mr. Presbury's claim prison medical staff approved him for a total hip replacement over ten years ago and, after examination on June 2, 2021 at Geisinger Medical Center, the physician refused to perform surgery.[18] The facility Manager found the grievance untimely, upheld the decision of the grievance officer, and denied his appeal and requested relief.[19]

Mr. Presbury made a final appeal to the Department of Corrections two days later.[20] He again complained about the denial of medical care. He objected to the prison's grievance coordinator's fact finding with no medical training and without consulting medical records and objected to the finding of an untimely grievance.[21] The Department of Corrections issued a final appeal decision on December 13, 2021, affirming the decision of SCI Phoenix grievance officers to dismiss the grievance as untimely.[22]

## II.    Analysis

Mr. Presbury pro se sued Correct Care Solutions and the SCI Phoenix Medical Department under 42 U.S.C. § 1983 alleging the denial and delay of medical care in violation of the Eighth and Fourteenth Amendments. He seeks $100,000 in compensatory damages from each Defendant, $1 million in punitive damages, and a declaration the Pennsylvania Department of Correction's policies are "illegal/defective."[23] He alleges being crippled and confined to a wheelchair for two years because of the Department's failure to provide him with corrective hip surgery ten years ago and continued delay and denial of medical care causing his present deteriorated condition.

Mr. Presbury alleges Correct Care Solutions should have referred him to a specialist outside of SCI Phoenix because SCI Phoenix is not equipped to adequately treat his hip condition. He alleges he now suffers from a ruptured disc and spinal misalignment in addition to his hip problem because of denial and delay of treatment. He alleges Correct Care Solutions delayed treatment for years and the June 2, 2021 examination at Geisinger Medical Center revealed his condition to be so deteriorated the surgeon at Geisinger refused to perform surgery. He alleges Correct Care Solutions denied him adequate medical care with deliberate indifference, carelessness, and recklessness to his medical condition causing him permanent harm. Mr. Presbury

also alleges Correct Care Solutions failed to train and supervise medical staff causing a deprivation of medical treatment.[24]

Mr. Presbury alleges the Medical Department at SCI Phoenix failed to provide him with medical care.[25] He alleges the Medical Department prevented him from receiving corrective hip surgery ten years ago which he attributes to "defective [administrative] policies," including "cost saving language" in the contract between the Medical Department at SCI Phoenix and Correct Care Solutions.[26]

Although largely repetitive, Mr. Presbury alleges both defendants acted with deliberate indifference to his serious medical condition.[27] He alleges both defendants ignored his medical records showing his complaints for over ten years and ignored his medical grievances, failed to diagnose his condition, and failed to provide adequate medical examinations or refer him for consultation.[28]

Mr. Presbury alleges Correct Care Solutions and SCI Phoenix Medical Department maintain policies allowing the prison's warden and deputy warden, who are non-medical personnel, to assert their "non-medical" disposition of his grievances without a full investigation leaving him crippled. He alleges this policy is a cost saving scheme and an incentive program by the Department of Corrections to cut costs of prisoner medical care causing a denial and delay of his medical treatment.[29] He alleges "all defendants" failed to train or supervise personnel assigned to assess his medical needs.[30] He alleges "all defendants" have decision making authority and personal involvement in the denial of medical care through the improper cost saving policy.[31]

Both Correct Care Solutions and the SCI Phoenix Medical Department move to dismiss the complaint.[32] Mr. Presbury responded to the motions by referring to his allegations Correct Care

Solutions and SCI Phoenix have a cost cutting policy limiting medical care and expensive testing causing a deprivation of care.[33]

We liberally construe Mr. Presbury's pro se complaint as attempting to state a claim under 42 U.S.C. § 1983 for the denial and delay of medical care and failure to train and supervise employees regarding the provision of medical care in violation of the Eighth Amendment. We are directed by our Court of Appeals to be "mindful of our 'obligation to liberally construe a *pro se* litigant's pleadings … particularly where the *pro se* litigant is imprisoned.'"[34] We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[35] However "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules – they must abide by the same rules that apply to all other litigants."[36]

Congress through section 1983 provides the vehicle by which federal constitutional claims may be brought in federal court.[37] To state a claim under section 1983, Mr. Presbury must allege a violation of a right secured by the Constitution or laws of the United States by a person acting under color of state law.[38] The language of section 1983 subjects "[e]very person" acting under state law to liability for deprivations of constitutional rights. Mr. Presbury does not sue individuals; he sues Correct Care Solutions and SCI Phoenix Medical Department.

### A.  We grant Correct Care Solutions' motion to dismiss.

The Eighth Amendment, applicable to Commonwealth actors through the Fourteenth Amendment, requires prison officials to provide incarcerated persons with medical care. State actors managing our correctional facilities violate the Eighth Amendment when they are deliberately indifferent to an incarcerated person's serious medical needs by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once

prescribed."[39] To state a claim against a prison official on an Eighth Amendment deprivation of medical care claim, an incarcerated person must allege (1) a state actor showed "deliberate indifference" to his medical needs, and (2) those needs were "serious."[40]

Our Court of Appeals finds deliberate indifference in "a variety of contexts including where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs."[41]

Correct Care Solutions moves to dismiss Mr. Presbury's complaint for six reasons: (1) Correct Care Solutions did not become a contracted vendor for the Department of Corrections until July 9, 2015 and cannot be responsible for the denial or delay of medical care before that date, including the failure to provide hip surgery ten years ago; (2) the statute of limitations bars Mr. Presbury's Eighth Amendment claims; (3) the complaint violates Federal Rule of Civil Procedure 8(a)(2) requiring a short and plain statement of the claim showing Mr. Presbury's entitlement to relief; (4) Mr. Presbury fails to allege a policy, practice, or custom of deliberate indifference to serious medical needs or a policy maker; (5) Correct Care Solutions cannot be held liable for the actions of its employees; and (6) Mr. Presbury fails to state a Fourteenth Amendment Equal Protection claim.

We grant Correct Care Solutions' motion for failing to allege a policy and policy maker and failing to state an equal protection claim.

### 1. Mr. Presbury fails to sufficiently plead a *Monell* claim against Correct Care Solutions.

We first address whether Mr. Presbury plausibly pleads a claim against Correct Care Solutions under section 1983 for depriving him of medical care in violation of the Eighth

Amendment. In *Monell v. Department of Social Services*, the Supreme Court held a municipality may be liable under section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible …"[42]

A private corporation like Correct Care Solutions providing medical services under a contract with the Department of Corrections may be liable under section 1983.[43] Mr. Presbury alleges a contract between Correct Care Solutions and the Department of Corrections to provide medical services.[44] Correct Care Solutions concedes it may be subject to section 1983 liability and does not contest its status as a state actor.[45]

Correct Care Solutions may only be liable under *Monell* if it had a policy or custom causing its agents to deprive care to the level of a constitutional violation.[46] There are two ways Mr. Presbury may seek to hold Correct Care Solutions liable on a *Monell* claim under section 1983: (1) its unconstitutional policy or custom led to his injuries; or (2) his injuries were caused by a failure to train, supervise or discipline its employees "reflect[ing] a deliberate or conscious choice."[47]

We liberally construe Mr. Presbury as asserting a policy to deny appropriate medical care including more expensive tests such as MRIs in an effort to cut costs and a failure to train and supervise medical personnel to provide adequate medical care. Mr. Presbury alleges Correct Care Solutions maintained a policy to deprive him of medical care as a "cost savings scheme" resulting in the denial and delay of medical care for non-medical reasons.[48]

On the first theory, Mr. Presbury must allege an "official proclamation, policy or edict by a decision maker possessing final authority to establish municipal policy" or, if alleging a custom, he must allege a "given course of conduct so well-settled and permanent as to virtually constitute

law."[49] Under this theory, "[l]iability is imposed 'when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees.'"[50]

Under the second theory – a failure to train or failure to supervise or discipline – Mr. Presbury must allege Correct Care Solutions' "failure or inadequacy amounting to deliberate indifference" to his Eighth Amendment right.[51] To state a failure to train or supervise claim, Mr. Presbury must allege (1) municipal policy makers knew its employees would confront a particular situation; (2) "the situation involves a difficult choice or a history of employees mishandling" the situation; and (3) "the wrong choice by an employee will frequently cause deprivation of constitutional rights."[52] Mr. Presbury also alleges Correct Care Solutions failed to train or supervise medical personnel "assigned to [assess] [his] medical outstanding needs [sic]."[53]

Both theories require a policy maker or decision maker. Correct Care Solutions argues Mr. Presbury fails to plead either (1) a policy maker; and (2) a policy, practice, or custom either violates his Eighth Amendment rights or is the "moving force" behind the constitutional harm.

Mr. Presbury fails to allege a policy maker or decision maker. To determine who is a decision maker or policy maker for purposes of *Monell*, we "must determine which official has final, unreviewable discretion to make a decision or take action."[54] Mr. Presbury fails to identify a decision maker and instead makes general references to "all defendants." His response continues to assert "all defendants" – without identifying an individual – are decision makers. [55]

For example, Mr. Presbury alleges "all defendants are charged with failure to act … being involved in the decision making of assigning methods of treatment and care known would not resolve [his] condition [sic]" for years.[56] He alleges Correct Care Solutions and SCI Phoenix Medical Department "had personal responsibility and involved in supervisor positions (i.e.

decision makers) [sic]" and "[a]ll defendants are charged with personal involvement and personal knowledge because they were/are the primary principle decision makers and policies, rules and medical regulations [sic]."[57] While he alleges "defendants" generally are the "decision makers" on the alleged cost savings policy, he fails to identify a policy maker or decision maker responsible for the unlawful policy and fails to state a claim for *Monell* liability.[58] We grant the motion to dismiss with leave to allow Mr. Presbury to amend his complaint to identify a policy maker.[59]

### 2. Correct Care Solutions impermissibly relies on facts outside the complaint.

Correct Care Solutions first argues facts outside the record: it did not become the medical vendor for the Department of Corrections until July 9, 2015, three other medical vendors provided care to Mr. Presbury from 2011 to July 8, 2015, and it is not responsible for the actions of medical providers before July 9, 2015, including Mr. Presbury's allegations the prison's medical providers failed to send him for hip replacement surgery over ten years ago. Correct Care Solutions purports to attach the cover page of a contract between it and the Department of Corrections for medical care services beginning July 9, 2015. No such contract is attached.

We would not consider this contract at this stage even if Correct Care Solutions attached it. We do not consider matters extraneous to the pleadings when considering a motion to dismiss except "documents *integral to or explicitly relied* upon in the complaint" and matters of record and in the public record.[60] We must accept as true factual assertions in the complaint.[61] Mr. Presbury alleges a contract between Correct Care Solutions and the Department of Corrections and arguably the document is "integral to or explicitly relied upon in the complaint" which we may consider without converting Correct Care's motion to dismiss into a motion for summary judgment.[62] But even if we considered the document, "consideration only goes so far" because

"[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail."[63]

Mr. Presbury alleges a continuum of denials and delay of care, including in June 2021 (well after Correct Care Solutions' contracted services) when a Geisinger Medical Center physician examined him and determined the denial and/or delay in surgery renders surgical treatment now ill-advised given Mr. Presbury's age and deteriorated condition. We may resolve fact disputes at trial, not on a motion to dismiss.

### 3.   We deny Correct Care Solutions' limitations argument at this stage.

Correct Care Solutions next argues we must dismiss because Mr. Presbury's claim for failure to authorize surgery ten years ago is facially barred by the statute of limitations. The statute of limitations is generally an affirmative defense raised in an answer to a complaint.[64] Under the "Third Circuit Rule," a statute of limitations defense may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if on the face of the complaint the claims have not been brought within the time provided by the statute of limitations.[65]

Correct Care Solutions argues the pleaded complained-of conduct occurred over ten years ago when the facility and its medical provider allegedly did not provide Mr. Presbury with the recommended hip replacement surgery and over five years ago on the alleged back problems.  Both claims are outside of the two-year statute of limitations applicable to section 1983 claims. It is true Mr. Presbury alleges a dislocated hip for over ten years, an inverted big toe for over five years, and damaged spinal discs for approximately three-and-a-half years causing him pain and loss of sensation and feeling.[66] But he also alleges he did not learn until June 2, 2021 his hip is "damaged beyond repair" through surgical intervention and a diagnosis of a damaged disc in his back.[67] Construing Mr. Presbury's complaint liberally, accepting all allegations as true, and drawing all

reasonable inferences in his favor, he pleads discovery of a denial of medical care within the two-year statute of limitations. Under Pennsylvania law, the discovery rule "tolls the statute of limitations when an injury or its cause is not reasonably knowable."[68] The discovery rule tolls the applicable statute of limitations "until a plaintiff could reasonably discover the cause of his action, including in circumstances where the connection between the injury and the conduct of another are not readily apparent."[69] This is an objective standard focusing on what a plaintiff "might have known by exercising the diligence required by law."[70] Whether the discovery rule applies to toll a statute of limitations is reserved for the summary judgment stage.[71] We may not dismiss a complaint under Rule 12 where "the pleading does not reveal when the limitations period began to run …"[72]

Mr. Presbury asserts the Geisinger physician declined to perform surgery after examining him on June 2, 2021 "because there appeared more serious medical elements he [Mr. Presbury] wasn't told of that concerned [the physician] whether [the physician] should do any surgery at all … returning [Mr. Presbury] back to SCI – [Phoenix] in worse condition and more discovered medical chronic conditions [than] SCI – [Phoenix] or [Correct Care Solutions] every [sic] advised [Mr. Presbury]"[73]; the Geisinger physician did not recommend surgery because of "the damaged disc in [Mr. Presbury's] back never brought to [Mr. Presbury's] attention although [Mr. Presbury's] medical, records examination presented exclusive demonstration of same [sic] …"[74]; and "had [Mr. Presbury] not be examined by the [Geisinger] doctor mention [sic] he would never/ever [sic] known he had a spine condition that could and may have crippled him for life."[75] We decline to dismiss at this early stage based on the statute of limitations defense.

#### 4.   We decline to dismiss the complaint under Rule 8(a)(2).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[76] Correct Care Solutions argues this complaint is anything but short and plain requiring dismissal.

Mr. Presbury is an incarcerated pro se litigant. The heart of his factual allegations comprise thirty pages with approximately 110 paragraphs. It is repetitive and is not a model of clarity. But it is understandable and presents cognizable legal claims sufficient to put Correct Care Solutions on notice to respond to the merits. It is clear enough for Correct Care Solutions to move to dismiss for failure to state a claim under Rule 12(b)(6).

There is no "proper length" for the "short" statement requirement.[77] Our Court of Appeals found Judge Gibson properly exercised his discretion in dismissing under Rule 8 with leave to amend a counseled 240-page, 600-paragraph complaint.[78] Mr. Presbury's pro se complaint is far from this extreme. A vague and repetitious pro se complaint containing extraneous information "will ordinarily be 'plain' if it presents cognizable legal claims to which a defendant can respond on the merits."[79] Our Court of Appeal instructs "a district court abuses its discretion when a pro se complaint is dismissed 'merely because it contains repetitious and irrelevant matter,' so long as that 'disposable husk [surrounds] … a core of proper pleading.'"[80] And "dismissal of pro se complaints 'is usually reserved for those cases in which the complained is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'"[81]

We decline to dismiss the complaint under Rule 8(a)(2).

#### 5.   We dismiss the equal protection claim against Correct Care Solutions.

Correct Care Solutions moves to dismiss Mr. Presbury's equal protection claim for failure to allege it treated him differently because of his race or other protected class. The Fourteenth

Amendment provides "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."[82] To state a claim for a deprivation of his equal protection rights, Mr. Presbury must allege Correct Care Solutions treated him differently from persons who are similarly situated.[83] He must also allege Correct Care Solutions acted with purposeful discrimination based on his membership in a protected class.[84]

Mr. Presbury fails to allege Correct Care Solutions treated him differently with regard to medical care because of his race or other protected characteristic. Mr. Presbury asserts – for the first time in his Opposition – he is treated differently than other inmates with "less expensive medical problems"; white inmates; and privileged inmates who are "doctors/lawyers entertainers (Bill Cosby) [who] had round the clock nurses and doctors treating them as if they were at Temple Hospital etc. and intentional discrimination based upon different treatment of membership protected class (Stars recording artist the rich and famous) [sic]."[85]

Mr. Presbury cannot amend his complaint by asserting new facts in his responsive briefing.[86] We dismiss his equal protection claim with leave to amend his complaint to allege facts of differing treatment resulting from purposeful discrimination.

### B.  We grant the Department of Corrections' motion to dismiss.

Mr. Presbury sues SCI Phoenix Medical Department which we construe as a claim against the Pennsylvania Department of Corrections. SCI Phoenix Medical Department, an instrumentality of the Pennsylvania Department of Corrections, contends it is immune from suit under the Eleventh Amendment. It alternatively argues it is not a "person" subject to suit under section 1983. We agree and dismiss Mr. Presbury's claims against SCI Phoenix Medical Department and the Pennsylvania Department of Corrections.

The Department of Corrections is an instrumentality of the Commonwealth and, as analyzed below, is immune under the Eleventh Amendment from a section 1983 action seeking money damages.[87] The Eleventh Amendment of the Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[88] The Supreme Court interprets the Eleventh Amendment to suits brought by citizens against their own States.[89]

Pennsylvania's Department of Corrections is part of the executive department of the Commonwealth and shares the Commonwealth's Eleventh Amendment immunity.[90] The Commonwealth may lose its immunity in two ways: (1) the Commonwealth waives immunity; and (2) Congress abrogates the States' immunity under a valid exercise of its power.[91]

The Commonwealth's General Assembly did not waive its Eleventh Amendment immunity from suit in federal courts.[92] And although Congress has the authority to abrogate the States' Eleventh Amendment immunity under section 5 of the Fourteenth Amendment,[93] the Supreme Court held over thirty years ago Congress did not do so in enacting section 1983.[94] The Department of Corrections is immune from suit and we dismiss claims against it.

The Department of Corrections also argues it is not a "person" under section 1983. This is correct; neither a State nor its officials acting in their official capacities are "persons" under section 1983.[95] We dismiss his claims against the Department seeking monetary and punitive damages.

Mr. Presbury also seeks declaratory relief "that the Pa. DOC ADM is illegal/defective [sic]."[96] There is an exception to Eleventh Amendment immunity under a doctrine set out by the Supreme Court in *Ex Parte Young*.[97] Under *Young*, "individual state officers can be sued in their individual capacities for ***prospective*** injunctive and declaratory relief to end continuing or ongoing

violations of federal law."[98] "The theory behind *Young* is that a suit to halt the enforcement of a state law in conflict with the federal constitution is an action against the individual officer charged with that enforcement and ceases to be an action against the state to which sovereign immunity extends; the officer is stripped of his official or representative character and becomes subject to the consequences of his individual conduct."[99] "The relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages."[100] The *Young* doctrine does not apply to states or state agencies[101] and does not apply to claims against state officials for violations of state law.[102]

SCI Phoenix Medical Department does not address Mr. Presbury's requested declaratory relief. As currently pleaded, Mr. Presbury fails to identify a Commonwealth official[103] and it is unclear whether the declaratory relief he seeks – the "Pa. DOC ADM is illegal/defective" – is permissible prospective relief or impermissible retrospective relief. We will allow Mr. Presbury leave to amend his complaint to allege a claim under section 1983 for violations of his Eighth Amendment for state actors acting in their individual (rather than official) capacities if he can do so under Federal Rule of Civil Procedure 11.

### III.    Conclusion

We dismiss Mr. Presbury's complaint without prejudice to plead a decision maker or policy maker necessary to support his claims against Correct Care Solutions, Inc. and to plead a Commonwealth official and prospective declaratory relief within the exception to Eleventh Amendment immunity to support his claim for declaratory relief only against SCI Phoenix Medical Department. All other claims for money damages against SCI Phoenix Medical Department are dismissed with prejudice as it is a Commonwealth entity immune from suit for money damages.

[1] Mr. Presbury named "Correct Care Solution, Inc." as a defendant in his complaint. Correct Care Solutions, LLC moved to dismiss. We refer to the defendant as "Correct Care Solutions, LLC" in deference to its self-described title.

[2] ECF Doc. No. 3 ¶¶ 18–55.

[3] *Id.* ¶ 1.

[4] *Id.* ¶ 2.

[5] *Id.* ¶ 3.

[6] *Id.* ¶¶ 4–5.

[7] *Id.* ¶ 8.

[8] *Id.* ¶ 7.

[9] *Id.* ¶¶ 6, 9.

[10] *Id.* ¶¶ 11, 13. Mr. Presbury clarifies he has a hammer toe for which he did not receive treatment causing injury to his knee and hip. *See* ECF Doc. No. 21 at 3–6, 17.

[11] ECF Doc. No. 3 ¶ 13.

[12] ECF Doc. No. 3-1.

[13] ECF Doc. No. 3-1 at 2 (using the pagination assigned by the CM/ECF docketing system).

[14] *Id.* at 4.

[15] *Id.*

[16] *Id.*

[17] *Id.* at 3.

[18] *Id.*

[19] *Id.*

[20] *Id.* at 1.

[21] *Id.*

[22] *Id.* at 5.

[23] ECF Doc. No. 3 at 6, ¶ VI (using the pagination assigned by the CM/ECF docketing system). Mr. Presbury refers to the Department of Correction's "ADM" which we will construe as the Department's administration and its policies.

[24] *Id.* ¶¶ 35, 53.

[25] *Id.* ¶¶ 14–17.

[26] *Id.* ¶ 16.

[27] *Id.* ¶¶ 56–100.

[28] *Id.* ¶¶ 60, 64, 65, 72.

[29] *Id.* ¶¶ 16, 75-76 and ¶¶ 85, 88, 92, 93, 98 (second set beginning at page 33 of ECF Doc. No. 3).

[30] *Id.* ¶ 53.

[31] *Id.* ¶¶ 45, 47, 49, 82, 85, 85, 90 (second set beginning at page 32 of ECF Doc. No. 3).

[32] ECF Doc. Nos. 12, 16. A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility ... a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that ... 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' ... in addition to assuming the veracity of 'all reasonable inferences that can be drawn

from' those allegations ... and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]' ..., we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[33] ECF Doc. No. 21.

[34] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) and citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013) (italics in original)).

[35] *Yogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (quoting *Mala.*, 704 F.3d at 244–45). Under Rule 8(e), "[p]leadings must be construed so as to do justice." Fed. R. Civ. P 8(e). We are directed by our Court of Appeals this liberal standard is "even more pronounced" where, as here, a plaintiff files a complaint pro se without assistance of counsel to "protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (citing *Higgs*, 655 F.3d at 339).

[36] *Yogt,* 8 F. 4th at 185 (quoting *Mala*, 704 F.3d at 245).

[37] Section 1983 provides in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …" 42 U.S.C. § 1983.

[38] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[39] *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (footnotes omitted); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

[40] *Robertson v. Gilmore*, 850 F. App'x 833, 837 (3d Cir. 2021) (quoting *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017)). Neither Correct Care Solutions nor the Department of Prisons argue Mr. Presbury failed to allege a serious medical need.

[41] *Pearson*, 850 F.3d at 538 (citing *Monmouth Cnty. Corr. Inst. v. Lanzaro*, 834 F.2d 326, 347 (3d. Cir. 1987)).

[42] 436 U.S. 658, 694 (1978).

[43] *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581, n. 4, 583 (3d Cir. 2003). "[*M*]onell applies to other private organizations faced with liability under § 1983." *Kauffman v. Pennsylvania Soc. for the Prevention of Cruelty to Animals*, 766 F. Supp. 2d 555, 561–62 (E.D. Pa. 2011).

[44] ECF Doc. No. 3 ¶ 16.

[45] ECF Doc. No. 12 at 11.

[46] *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014)).

[47] *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019)).

[48] ECF Doc. No. 3 ¶ 75.

[49] *Forrest*, 930 F.3d at 105–06 (citing *Estate of Roman*, 914 F.3d at 798).

[50] *Thomas*, 749 F.3d at 222 (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)).

[51] *Forrest*, 930 F. 3d at 106 (citing *Estate of Roman*, 914 F.3d at 798).

[52] *Id.* (citing *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).

[53] ECF Doc. No. 3 ¶ 53.

[54] *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1481 (3d Cir. 1990)).

[55] *See* ECF Doc. No. 21 at 10, 16, 17, 19.

[56] ECF Doc. No. 3 ¶ 45.

[57] *Id.* ¶¶ 46, 75.

[58] *See Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) (affirming dismissal of *Monell* claim because plaintiff failed to identify an unlawful policy or custom and failed to identify a policy maker or decision maker responsible for the alleged unlawful conduct).

[59] Because Mr. Presbury fails to allege a policy maker or decision maker to adequately state a *Monell* claim, we do not reach Correct Care Solutions' argument Mr. Presbury fails to allege a policy, practice, or custom either violating his Eighth Amendment right or is the "moving force" behind the constitutional harm. If Mr. Presbury choses to amend his complaint, he must adequately plead a cost saving policy supported by allegations "either of (1) what the relevant policies are, (2) what basis he has for thinking that policies to save money affected his medical treatment, or (3) what specific treatment he was denied as a result of these policies." *Winslow v. Prison Health Servs.*, 406 F. App'x 671, 674 (3d Cir. 2011).

[60] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original) (citations omitted).

---

[61] *Doe v. Princeton Univ.*, 30 F. 4th 335, 342 (3d Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).

[62] *Id.* (quoting *Doe v. Univ. of Sciences*, 961 F.3d 203, 208 (3d Cir. 2020)).

[63] *Id.*

[64] Fed. R. Civ. P. 8(c)(1).

[65] *Silla v. Holdings Acquisition Co. LP*, No. 20-356, 2021 WL 4206169, at *1 (3d Cir. Sept. 16, 2021) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)).

[66] ECF Doc. No. 3 ¶ 22.

[67] *Id.* ¶¶ 3–9.

[68] *In re Risperdal Litig.*, 223 A.3d 633, 640 (Pa. 2019) (citing *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005)).

[69] *Id.* (citing *Wilson v. El-Daief*, 964 A.2d 354, 361 (Pa. 2009)).

[70] *Id.* (quoting *Gleason v. Borough of Moosic*, 15 A.3d 479, 485 (Pa. 2011)).

[71] *Houser v. Feldman*, No. 21-676, 2022 WL 1265818, at *8, n. 6 (E.D.Pa. Apr. 28, 2022) (collecting cases).

[72] *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (quoting *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011)).

[73] ECF Doc. No. 3 ¶ 6.

[74] *Id.* ¶ 8.

[75] *Id.* ¶ 12.

[76] Fed. R. Civ. P. 8(a)(2).

[77] *Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019).

[78] *Id.* (citing *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 703 (3d Cir. 1996)).

[79] *Id.* at 94 (citations omitted).

[80] *Id.* (footnote omitted) (quoting *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001)).

[81] *Id.* (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

---

[82] U.S. Const. amend. XIV, § 1.

[83] *Proctor v. James*, 811 F. App'x 125, 129 (3d Cir. 2020) (quoting *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003)).

[84] *Harris v. Poska*, 728 F. App'x 149, 154 (3d Cir. 2018); *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009).

[85] ECF Doc. No. 21 at 14.

[86] *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) ("we do not consider after-the fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)") (citing *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

[87] *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020).

[88] U.S. Const. amend. XI.

[89] *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72–73 (2000).

[90] *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (citing 71 Pa. Cons. Stat. § 61)).

[91] *Lavia*, 224 F.3d at 195 (citations omitted).

[92] *Id.* (citing 42 Pa. Cons. Stat. Ann. § 8521(b)).

[93] *Id.* (citations omitted).

[94] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66–70 (1989).

[95] *Id.*, 491 U.S. at 70–71.

[96] ECF Doc. No. 3 at 6, § VI.

[97] 209 U.S. 123 (1908). A state's immunity under the Eleventh Amendment is subject to three exceptions: (1) congressional abrogation of sovereign immunity; (2) the state waives sovereign immunity by consenting to suit; and (3) individual state officers sued in their individual capacities for prospective injunctive and declaratory relief to end a continuing or ongoing violation of federal law. *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503–06 (3d Cir. 2001).

[98] *MCI Telecomm. Corp.*, 271 F.3d at 506 (emphasis added).

[99] *Id.* (citations omitted).

[100] *Id.* (citation omitted).

---

[101] *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 626 (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).

[102] *Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984)).

[103] *Jones v. Sussex Corr. Inst.*, 725 F. App'x 1557, 159–60 (3d Cir. 2017) (affirming dismissal of prisoner's complaint against state correctional institution for failing to plead facts the claim falls within the exceptions to Eleventh Amendment immunity, including prisoner's failure to identify a state official and prospective relief).