**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALLEN PRESBURY, SR.** | **:** | **CIVIL ACTION** |
| | **:** | |
| | **:** | |
| **v.** | **:** | **NO. 22-331** |
| | **:** | |
| **CORRECT CARE SOLUTIONS, LLC** | **:** | |
| **AKA WELL-PATH, CORRECTIONAL** | **:** | |
| **HEALTHCARE ADMINISTRATOR** | **:** | |
| **BRITNEY HUNER** | **:** | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                   **January 27, 2023**

A person incarcerated in the Commonwealth's correctional facilities for over forty years pro se alleges an outside medical provider intentionally denied him a necessary hip replacement over ten years ago consistent with a custom of not providing this level of service and in an effort to conserve costs. He repeatedly asked for treatment with no success. He learned in June 2021 of irreversible regression in his hip due to an alleged failure to authorize the hip replacement over ten years ago. The incarcerated person now alleges severe harm and pain caused by the denial and delay of medical care. He sues the private medical provider as well as a health care administrator who allegedly knew the final decision makers did not provide him the medical care. He offers few details as an incarcerated pro se litigant other than facts concerning the private company's failure to address his medical condition. We dismissed his first pro se Complaint with leave to amend. He returns with an amended Complaint pleading enough facts to allow us to plausibly infer the private medical provider may have had a custom not to care for serious hip conditions which irretrievably regressed by June 2021. The incarcerated person cannot sue the health care administrator in her official capacity. He also pleads no facts which allow us to find the administrator individually liable. We grant him leave to amend facts against the administrator if possible.

I.   **Alleged pro se facts.**[1]

The Commonwealth has detained seventy-five-year old Allen Presbury, Sr. for at least forty years in correctional facilities with his most recent supervision at SCI Phoenix.[2] The Commonwealth's Department of Corrections hired outside medical provider Correct Care Solutions, LLC to provide medical care to incarcerated persons.[3]

An unidentified individual approved Mr. Presbury for a total hip replacement over ten years ago during his incarceration.[4] Correct Care denied Mr. Presbury the surgery. Mr. Presbury suffered a dislocated hip two to five years ago.[5] Mr. Presbury filed a grievance with the Department of Corrections.[6] It is unclear when Mr. Presbury submitted the grievance in relation to the dislocated hip. Unidentified individuals transferred Mr. Presbury to several medical facilities and failed to treat Mr. Presbury's hip condition.[7]

### Mr. Presbury learns of permanent damage in June 2021 and grieves the delay.

The Department of Corrections and Correct Care took no further action until June 2, 2021 when an unidentified individual transferred Mr. Presbury to SCI Coal Township for an examination by a physician at Geisinger Medical Center.[8] The physician diagnosed Mr. Presbury with a ruptured disc in his spine and an improperly aligned spine.[9] The physician told Mr. Presbury his hip is so severely damaged a complete hip replacement is the only solution to remedy his condition. The physician declined to perform the hip replacement surgery and refused to consult further on the case because of the high rate of infection associated with hip replacement surgery, the delay in the originally approved hip replacement surgery, and the additional complication of Mr. Presbury's spine issues.[10] The physician also diagnosed Mr. Presbury with an inverted toe.[11] The physician suggested fixing the toe would improve Mr. Presbury's torso lean causing spinal misalignment.[12]

Unidentified individuals, who we infer are employed by the Department of Corrections, transferred Mr. Presbury to SCI Phoenix where he filed a grievance in September 2021 challenging the denial of medical care.[13] The Facility's grievance coordinator rejected Mr. Presbury's grievance on September 22, 2021 as untimely submitted more than fifteen working days after the complained-of event.[14]

Mr. Presbury appealed to the warden four days later.[15] Mr. Presbury complained about the deliberate indifference to his medical condition, the treatment in lieu of surgery, Correct Care's refusal to provide the surgery, the denial of medical care on his hip for the past ten years, and the grievance coordinator's rejection of Mr. Presbury's grievance as untimely (because the harm is continually happening).[16] Mr. Presbury requested the warden conduct an independent investigation.[17] The Facility Manager found the grievance untimely, upheld the decision of the grievance officer, and denied Mr. Presbury's requested relief.[18]

Mr. Presbury made a final appeal to the Department of Corrections.[19] He complained about the denial of medical care, objected to the grievance coordinator's fact finding without medical training, and objected to the finding of an untimely grievance.[20] The Department of Corrections issued a final decision on December 13, 2021 affirming the decision of the grievance officers to dismiss the grievance as untimely.[21]

### *Mr. Presbury brings an Eighth Amendment claim.*

Mr. Presbury promptly pro se sued Correct Care and the SCI Phoenix Medical Department alleging denial and delay of medical care violates his Eighth and Fourteenth Amendment rights.[22] We dismissed Mr. Presbury's claims against the SCI Phoenix Medical Department because the Pennsylvania Department of Corrections is immune under the Eleventh Amendment from suit.[23] We dismissed Mr. Presbury's claims against Correct Care without prejudice for the failure to state

a claim.[24] We also dismissed his Fourteenth Amendment claims.

Mr. Presbury amended his Complaint.[25] Mr. Presbury sues Correct Care again based solely on its liability for defective polices and customs. He added Ms. Britney Huner as a named defendant. Britney Huner is a Correctional Health Care Administrator.[26] Mr. Presbury alleges it is the role of a Correctional Health Care Administrator to oversee "the entire medical process of [Pennsylvania Department of Corrections] inmates t[o[ review and ensure they attend examinations, get [their] appropriate prescription, and ensure they receive adequate medical care."[27] Mr. Presbury alleges Ms. Huner had "personal knowledge" and "involvement" with final decision makers.[28] Mr. Presbury does not allege the identity of the final decision makers, Ms. Huner actually made the decision to deny medical care, or Ms. Huner would have been able to reject a Correct Care decision. Mr. Presbury alleges Ms. Huner must comply with Correct Care's mandates.[29]

Mr. Presbury alleges Correct Care's continued failure to provide him with proper medical care caused his present deteriorated condition.[30] He alleges Correct Care prevented him from receiving the surgery because "defective . . . policies," including "cost saving language" in Correct Care's contract with the Medical Department at SCI Phoenix.[31]

Mr. Presbury alleges Correct Care and Ms. Huner acted with deliberate indifference to his serious medical needs.[32] He alleges Correct Care and Ms. Huner ignored his medical records and grievances.[33] He alleged in his grievance Correct Care maintains policies allowing the Facility's warden and deputy warden to assert their non-medical disposition of Mr. Presbury's grievances.[34] He alleges this policy is a cost-saving scheme.[35] Mr. Presbury alleges Correct Care has decision-making authority and personal involvement as to this policy.[36] Mr. Presbury alleges Ms. Huner is involved with the final decision-makers, but is not a final decisionmaker herself.[37]

## II.   Analysis

We liberally construe Mr. Presbury's pro se Complaint as attempting to state a claim against Correct Care under Section 1983 for the denial and delay of medical care caused by a set of customs adopted by Correct Care.[38] We liberally construe Mr. Presbury's pro se Complaint as an attempt to state a claim against Ms. Huner under Section 1983 in her personal and official capacity as an employee of the Pennsylvania Department of Corrections. Our Court of Appeals directs us to be "mindful of our 'obligation to liberally construe a *pro se* litigant's pleadings . . . particularly when the *pro se* litigant is imprisoned.'"[39] Our Court of Appeals directs us to apply relevant legal principles even if the Complaint fails to name them.[40] But "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules."[41]

Correct Care moves to dismiss all claims against it in Mr. Presbury's Amended Complaint.[42] Correct Care argues Mr. Presbury failed to identify a policy maker as required by the policy theory of *Monell* liability and the improper training theory of *Monell* liability.[43] Correct Care argues Mr. Presbury failed to identify a policy practice or custom relating to denial of medical care.[44] Mr. Presbury did not respond to Correct Care's or Ms. Huner's motions to dismiss.

Ms. Huner moves to dismiss the claims for monetary damages against her in her official and personal capacity.[45] Ms. Huner does not move to dismiss the claims to the extent Mr. Presbury seeks prospective declaratory relief.[46] Ms. Huner argues Mr. Presbury failed to state a claim against her in her individual capacity because Mr. Presbury did not allege her personal involvement.[47] Ms. Huner argues Mr. Presbury failed to state a claim against her in her official capacity because Ms. Huner is not a person subject to suit under section 1983.[48]

**A.  Mr. Presbury pleads a *Monell* Eighth Amendment claim against Correct Care.**

Mr. Presbury sues Correct Care under Section 1983 in its capacity as a contractor of the Department of Corrections. We deny Correct Care's motion to dismiss Mr. Presbury's *Monell* Eighth Amendment claim.

Section 1983 is a vehicle for federal constitutional claims to be brought in federal court. Mr. Presbury must allege "deliberate indifference to serious medical needs" to state an Eighth Amendment claim.[49] Our Court of Appeals directs deliberate indifference is properly pleaded if Mr. Presbury alleges Correct Care officials knew "of a prisoner's need for medical treatment but intentionally refuses to provide it;" "delay[ed] necessary medical treatment based on a non-medical reason" or "prevent[ed] a prisoner from receiving needed or recommended medical treatment."[50]

A private corporation under contract with a state agency, like Correct Care, may be liable under Section 1983.[51] In *Monell v. Department of Social Services*, the Supreme Court held a municipality may be liable under Section 1983 "when execution of a government's *policy or custom*, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."[52] Mr. Presbury alleges a contract between Correct Care and the Department of Corrections to provide medical services.[53] Correct Care concedes it may be subject to liability under Section 1983 and does not contest its status as a state actor.[54] Correct Care focuses on the *Monell* policy or custom requirement.[55]

Mr. Presbury may proceed into discovery on his civil rights claims against Correct Care under *Monell* by alleging (1) its unconstitutional policy or custom led to his injuries; or (2) his injuries were caused by a failure to train, supervise or discipline its employees "reflect[ing] a

deliberate or conscious choice."[56] Under the first theory, Mr. Presbury must allege an official policy by a final decision maker or a custom "so well-settled and permanent as to virtually constitute law."[57] "Liability is imposed 'when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees.'"[58]

We previously dismissed Mr. Presbury's *Monell* claim under the custom theory for failing to state a custom.[59] We liberally construe Mr. Presbury's amended Complaint as an attempt to allege two Correct Care customs possibly giving rise to *Monell* liability: (1) Correct Care ignores the medical directives of outside medical professionals, and (2) Correct Care gives greater weight to financial gains over prisoner health. We need not address the training theory under *Monell* because Mr. Presbury properly states a claim against Correct Care under the policy or custom theory.

We agree the policy or custom theory is difficult for incarcerated pro se litigants to plead. Most bad actors will not openly publish unconstitutional policies or will avoid putting the policies on paper. This leaves only the custom theory which is difficult to plead because an incarcerated pro se litigant will have a difficult time pointing to a series of actions in the past by a particular actor to establish a particular custom. But incarcerated citizens have successfully pleaded the custom theory against Correct Care.

Judges McHugh's and DuBois's opinions on Correct Care's customs inform our analysis. In *Williams v. Wexford Health Sources, Inc.*, Jermaine Williams sued Correct Care, among others, under Section 1983 for improper medical treatment in violation of the Eighth Amendment.[60] Mr. Williams is a known epileptic incarcerated at a facility.[61] Mr. Williams alleged Correct Care denied him his prescribed anti-seizure medication.[62] The "unjustified denial" caused Mr. Williams

to suffer additional seizures and fall down a set of stairs.[63] Mr. Williams alleged Correct Care denied him the proper physical therapy to recover from his fall despite Mr. Williams filing at least three grievances.[64] Correct Care offered neck and back surgery with only a fifty percent chance of effective recovery.[65] Mr. Williams turned down the surgery and requested a less intrusive surgery.[66] Correct Care denied this request.[67]

Correct Care moved to dismiss Mr. Williams's complaint.[68] Correct Care argued Mr. Williams failed to allege a policy or custom as required under *Monell*.[69] Judge McHugh denied Correct Care's motion.[70] Judge McHugh held the disregard of medical notes and medical recommendations (during seven physical therapy consultations) after Mr. Williams's fall supported Mr. Williams's allegation of a policy or custom of ignoring physical therapy needs.[71] Judge McHugh held the fall down the stairs put Correct Care on notice of Mr. Williams's need for surgery and Correct Care's failure to act in response to being on notice demonstrated a custom or policy of failing to provide surgery in a timely manner.[72] Judge McHugh never determined whether, as a matter of fact, Correct Care had a custom of ignoring physical therapy needs or failing to provide surgery in a timely manner because the case settled before trial.

In *Green v. Wexford Health Sources, Inc.*, Rodney Green sued Correct Care, among others, under Section 1983 for improper medical treatment violating the Eighth Amendment.[73] Mr. Green suffered a gunshot wound and an incomplete spinal injury before being incarcerated. Wexford (a non-Correct Care defendant) stopped Mr. Green's physical therapy.[74] An outside provider determined Mr. Green should continue physical therapy.[75] Wexford chose to decrease Mr. Green's physical therapy and cease outside treatment.[76] Mr. Green filed multiple grievances requesting more care over the next year and an outside provider requested an update on Mr. Green's health, but Wexford made no change to Mr. Green's care.[77] The Department of Corrections eventually

transferred Mr. Green to another facility for the necessary medical treatment (Correct Care replaced Wexford during this time frame).[78] Correct Care cancelled Mr. Green's physical therapy and ignored Mr. Green's grievances.[79]

Correct Care moved to dismiss Mr. Green's complaint for failure to state a claim.[80] Correct Care argued Mr. Green failed to allege a policy or custom as required under *Monell*.[81] Judge DuBois denied Correct Care's motion.[82] Judge Dubois held the repeated denial of intensive physical therapy despite recommendations from two medical providers is sufficient to plead a "custom of ignoring medical directives from outside providers."[83] Judge DuBois never determined whether, as a matter of fact, Correct Care had a custom of ignoring medical directives.[84]

Mr. Presbury alleges Correct Care ignored the advice of an outside medical provider for ten years. Correct Care mostly ignored Mr. Presbury's four "Health Care" or "Medical Co-Pay" grievances requesting medical attention filed between June 2017 and June 2022.[85] Correct Care eventually brought Mr. Presbury to another outside medical provider but Mr. Presbury's harm in those ten years only worsened.[86] Mr. Presbury only saw one outside medical provider before his condition worsened unlike in *Williams* and *Green* (seven and two medical recommendations respectively). But we cannot reasonably find being kept away from outside medical providers cuts against a custom of ignoring the medial directives of outside medical professionals. Doing so would allow Correct Care to prevent incarcerated citizens from ever getting medical help and avoiding liability. We find Mr. Presbury sufficiently pleaded a Correct Care custom of ignoring the medical directives of outside medical professionals.

Correct Care's alleged custom of giving greater weight to financial gains over prisoner health is more difficult to plead. Mr. Presbury alleges Correct Care delays treatment based on financial reasons and not medical reasons.[87] Mr. Presbury is unable to point to a series of actions

where Correct Care *expressly* gave greater weight to financial gains. Mr. Presbury pointed to a ten-year history of his harm perpetuated by Correct Care's decision-making on his health. Correct Care never provided him with reason for its decisions. At the motion to dismiss stage we do not hold litigants to the high bar of proving their entire case. It need only be plausible Correct Care denied Mr. Presbury care because of a custom of giving greater weight to financial gains over prisoner health. We find Mr. Presbury sufficiently pleaded a Correct Care custom of giving greater weight to financial gains over prisoner health due to the alleged ten-year delay in treatment against the express recommendation of an outside medical provider.

Mr. Presbury pleaded the facts missing in his earlier-plead *Monell* claim.[88] We deny Correct Care's motion to dismiss.

### B. Mr. Presbury fails to state a claim against Ms. Huner.

Mr. Presbury sues Ms. Huner in her official and individual capacities.[89] We find Mr. Presbury fails to state a claim against Ms. Huner in either capacity.

The Supreme Court provides a state official may not be sued for damages when acting in her official capacity because a state official is not a "person" under Section 1983.[90] The Supreme Court held a suit against a state official in her official capacity is a suit against the official's office, not the official herself.[91] Mr. Presbury is unable to sue Ms. Huner, or any other state official, for damages in her official capacity under Section 1983. We dismiss Mr. Presbury's claim for damages against Ms. Huner in her official capacity.

Congress in section 1983 allows Mr. Presbury to pursue his claim against Ms. Huner in her personal capacity if the state official violates a person's constitutional rights. Mr. Presbury alleges Ms. Huner, as a Correctional Health Care Administrator, oversees the medical process of incarcerated citizens' reviews, ensures incarcerated citizens attend examinations, ensures incarcerated citizens receive appropriate prescriptions, and ensures incarcerated citizens receive

adequate medical care. Mr. Presbury alleges Ms. Huner had "personal knowledge" and "involvement" with final decision makers.[92] Mr. Presbury does not allege Ms. Huner's involvement with the denial of medical care to Mr. Presbury. Mr. Presbury does not allege Ms. Huner made a decision relating to the alleged custom.

To bring a claim under Section 1983 against an individual in their individual capacity, the individual must have personal involvement in the alleged constitutional wrongs.[93] Ms. Huner "cannot be held responsible for a constitutional violation which [s]he . . . neither participated in nor approved."[94] "A supervisor can be held liable, but only where 'he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.'"[95]

Mr. Presbury fails to allege his medical history in relation to Ms. Huner. Mr. Presbury only generally describes the role of a Correctional Health Care Administrator.[96] Mr. Presbury fails to plead his claim Ms. Huner's personal involvement in the denial or delay of Mr. Presbury's medical care. Mr. Presbury has not alleged Ms. Huner supervises the person creating the cost-saving custom or those who denied Mr. Presbury the surgery. Mr. Presbury alleges the opposite. He alleges Correct Care controlled Ms. Huner and it would fire Ms. Huner if she failed to follow Correct Care's policies.[97] We dismiss Mr. Presbury's damages claims against Ms. Huner in her personal and official capacity.

## III.   Conclusion

Mr. Presbury meets his burden to allege a Correct Care custom in place which caused the denial and delay of his medical care. We deny Correct Care's motion to dismiss this claim consistent with *Monell*. But he does not plead a basis for damages from Ms. Huner. Ms. Huner may not be sued for damages in her official capacity under Section 1983. We dismiss Mr.

Presbury's claim for damages against Ms. Huner in her official capacity with prejudice. Mr. Presbury fails to meet his burden to allege an action by Ms. Huner involving her personally in the denial and delay of Mr. Presbury's medical care. This is Mr. Presbury's first attempt at suing Ms. Huner in her individual capacity and we dismiss Mr. Presbury's claim against Ms. Huner in her individual capacity without prejudice.

---

[1] "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). We are directed by our Court of Appeals this liberal standard is "even more pronounced" where, as here, a plaintiff files a complaint pro se without assistance of counsel to "protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (citing *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)).

[2] ECF Doc. No. 33 ¶ 81; *See* Complaint, *Presbury v. Wetzel,* No. 19-1791 (E.D.Pa.), ECF Doc. No. 2, p. 6 of 31.

[3] ECF Doc. No. 33 ¶¶ 18-55.

[4] *Id.* ¶ 1. We today grant Mr. Presbury's request to refer his claims to our Court's Volunteer Panel of Lawyers who may represent him in obtaining the discovery of medical records and witnesses to this alleged diagnosis over ten years ago.

[5] *Id.* ¶ 1.

[6] ECF Doc. No. 3–1 at 2–6 (using the pagination assigned by the CM/ECF docketing system); ECF Doc. No. 33 at 41–43, 45–47 (using the pagination assigned by the CM/ECF docketing system). Mr. Presbury attached documents relating to his September 2021 grievance of the denial of medical care to his original complaint at ECF Doc. No. 3–1. He did not attach those documents to his amended Complaint at ECF Doc. No. 33. Instead, Mr. Presbury attached the verification of Keri Moore, an employee of the Department of Corrections, Office of Inmate Grievances and Appeals. Ms. Moore verified Mr. Presbury filed a grievance related to his medical care on September 17, 2021.

[7] ECF Doc. No. 33 ¶ 2.

[8] *Id.* ¶ 3.

[9] *Id.* ¶¶ 3–9.

[10] *Id.*

[11] Id. ¶ 13.

[12] *Id.*

[13] ECF Doc. No. 3–1 at 2–6 (using the pagination assigned by the CM/ECF docketing system); ECF Doc. No. 33 at 41–43, 45–47 (using the pagination assigned by the CM/ECF docketing system).

[14] *Id.*.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] ECF Doc No. 3-1 at 5 (using the pagination assigned by the CM/ECF docketing system).

[22] ECF Doc. No. 3.

[23] ECF Doc. No. 22 at 14-16.

[24] *Id.* at 6-14.

[25] ECF Doc. No. 33.

[26] *Id.* ¶¶ 78–79.

[27] *Id.*

[28] *Id.* ¶ 79.

[29] *Id.* ¶ 78.

[30] *Id.* ¶ 56.

[31] *Id.* ¶¶ 16, 76–77.

---

[32] *Id.* ¶¶ 56, 59–60, 62.

[33] *Id.* ¶ 60.

[34] *Id.* at 45 (using the pagination assigned by the CM/ECF docketing system).

[35] *Id.* ¶¶ 68-72.

[36] *Id.* ¶ 65.

[37] *Id.* ¶ 79.

[38] We cannot plausibly infer Mr. Presbury is challenging a Correct Care *policy*. We previously told Mr. Presbury he must assert a policy maker or express policy to state a claim under the policy theory of *Monell* liability. ECF Doc. No 22. Mr. Presbury did not change his Complaint suggesting an express policy, so we construe Mr. Presbury is alleging a *Monell* claim under a "custom" theory of liability.

[39] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs,* 655 F.3d at 339 and citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013) (italics in original)).

[40] *Yogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (quoting *Mala*, 704 F.3d at 244–45).

[41] *Id.*(quoting *Mala*, 704 F.3d at 245).

[42] A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility ... a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, we "must accept all factual allegations in the complaint as true and view them in the light most favorable to plaintiffs." *Yogi Krupa, Inc. v.*

*GLeS, Inc.*, 2022 WL 16834164, at *3 (D. Del. Nov. 9, 2022). We must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that ... 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' ... in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations ... and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'..., we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[43] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[44] ECF Doc. No. 43 at 10–11,

[45] ECF Doc. No. 44.

[46] *Id.* at 4.

[47] *Id.* at 6-7.

[48] *Id.* at 5-6.

[49] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

[50] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[51] *Natalie v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581, n. 4, 583 (3d Cir. 2003).

[52] *Monell*, 436 U.S. at 694 (emphasis added).

[53] ECF Doc. No. 33 ¶ 20.

[54] ECF Doc. No. 12 at 11.

[55] ECF Doc. No. 43 at 8–12.

[56] *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019)).

[57] *Id.* at 105-06 (citing *Estate of Roman*, 914 F.3d at 798).

[58] *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)).

[59] We also dismissed Mr. Presbury's *Monell* claim under the policy theory and the improper training theory because Mr. Presbury failed to identify a decision maker. We need not address whether Mr. Presbury now identifies a final decision maker because the custom theory does not have a final decision maker requirement.

[60] No. 16-3629, 2017 WL 1406575, at *1 (E.D. Pa. Apr. 20, 2017).

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.* at *1-2.

[65] *Id.* at *2

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.* at *3.

[70] *Id.* at *4.

[71] *Id.*

[72] *Id.*

[73] *Green v. Wexford Health Sources, Inc.*, No. 16-3630, 2016 WL 7239891, at *1 (E.D. Pa. Dec. 14, 2016).

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.* at *2

[79] *Id.*

[80] *Id.* at *1.

[81] *Id.* at *5.

[82] *Id.* at *7.

[83] *Id.* at *6.

[84] *Id.*

[85] ECF Doc. No. 33 at 43.

[86] *Id.* ¶¶ 1-13.

[87] *Id.* ¶¶ 68-72.

[88] Correct Care raises two other arguments in favor of dismissal of claims already dismissed. First, Correct Care argues it cannot be held liable under respodeat superior as a private health care company. ECF Doc. No. 43 at 11-14. We do not construe Mr. Presbury's claim as a disallowed respondeat superior claim. We need not address Correct Care's argument. Second, Correct Care argues it cannot be held liable for a Fourteenth Amendment violation as pleaded. *Id.* at 14. We dismissed Mr. Presbury's equal protection claim and he failed to amend his equal protection claim. We need not readdress the deficiencies in Mr. Presbury's Fourteenth Amendment equal protection claim. Mr. Presbury cannot proceed on this dismissed claims.

[89] ECF Doc. No. 33 ¶¶ 78-79.

[90] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

[91] *Id.*

[92] ECF Doc. No. 33 ¶ 79.

[93] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

---

[94] *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020), *cert. denied*, 209 L. Ed. 2d 532 (2021) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007)).

[95] *Id.* (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010); *see also Rode*, 845 F.2d at 1207 ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.").

[96] ECF Doc. No. 33 ¶ 78.

[97] *Id.*